2004 WY 41

**The STATE of Wyoming, Petitioner,**

v.

**Robert NEWMAN, Respondent.**

No. 03–58.

Supreme Court of Wyoming.

April 19, 2004.

Representing Petitioner: Patrick J. Crank, Attorney General; Paul Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General.

Representing Respondent: Donald Cole, Cheyenne, Wyoming.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

KITE, Justice.

[¶ 1]   After three days of trial before a jury, the district court declared a mistrial on the basis of prosecutorial misconduct and dismissed with prejudice the charges against Robert Newman on the ground that the six-month deadline for speedy trial had passed and a second trial on re-filed charges would further exceed the deadline.   The State filed a petition for review challenging the order, which this Court granted conditioned upon the parties briefing the question of the appropriateness of the State's challenge by means of a petition for review.   We hold that the petition for review is appropriate under these narrow circumstances and reverse the dismissal with prejudice, holding that the speedy trial time period ceased to run when the court granted a mistrial and, therefore, the district court abused its discretion in dismissing the case with prejudice.

1.   The re-scheduling that occurred prior to the February 3, 2003, date was due primarily to the district court's crowded docket and efforts to join the trials of, and reach plea agreements with, Mr.

## ISSUES

[¶ 2]   We address the following issues:

1.   Whether under these unusual circumstances the State may utilize a petition for review to challenge the district court's order of dismissal with prejudice.

2.   Whether the district court erred in dismissing the case with prejudice.

## FACTS

[¶ 3]   Mr. Newman was charged on August 2, 2002, with aggravated assault and battery in violation of Wyo. Stat. Ann. § 6–2–502(a)(ii) (Michie 1997).   After vacating several trial settings, the district court scheduled the trial to begin February 3, 2003.[1]   On January 30, 2003, at a re-arraignment hearing, the prosecution advised the district court the State was not ready to proceed with trial because it was waiting on a report from the state crime lab.   When asked by the court what the defense's position was on another continuance of the trial date, counsel for Mr. Newman responded:

> [H]e would like to go to trial as soon as possible. . . . [M]y client would like to proceed.   I guess he would be willing to waive a speedy trial if the Court does continue this.   But I will tell you, Your Honor, that he would like to proceed with this as soon as possible.

The district court vacated the February 3, 2003, trial date and the trial was re-set for March 3, 2003.   On February 25, 2003, Mr. Newman filed a motion to dismiss on the basis that the speedy trial time had passed.   The district court held a hearing on the motion on February 27, 2003.   At the close of the hearing, the district court denied the motion and the case proceeded to trial on March 3, 2003.

[¶ 4]   On the morning of the third day of trial, March 5, 2003, Mr. Newman appeared in the courtroom wearing his military uniform.   In chambers, prior to trial, the prosecution raised the issue of Mr. Newman appearing in uniform, asserting that

Newman and his two co-defendants.   The State and Mr. Newman's co-defendants reached agreements before February 3, 2003, leaving only Mr. Newman to stand trial.

he represented to the court in his motion to dismiss that he had been demoted to errand boy and thus he should not be allowed to portray himself before the jury as a member of the United States Air Force. The district court pressed on with the trial, stating that Mr. Newman was entitled to wear his uniform. After lunch on the same day, the prosecution again raised the issue of the uniform in chambers and claimed that Mr. Newman was violating military code by appearing in court in his uniform. The district court again declined to become involved in the issue, stating that whether or not Mr. Newman was entitled to wear his uniform was an issue for the military, not the state district court.

[¶ 5] The following day, March 6, 2003, defense counsel and the prosecution again appeared in chambers at which time defense counsel informed the district court that during the morning recess the previous day outside the presence of the jury the prosecution questioned Mr. Newman directly about why he was wearing his uniform. Defense counsel moved for a mistrial on the basis of prosecutorial misconduct. The district court heard the prosecutor's version of the exchange and then took testimony from Mr. Newman as well as his parents and another prosecutor who were in the courtroom during the exchange. The district court found that the prosecution communicated directly with a party represented by counsel in violation of Rule 4.2 of the Wyoming Rules of Professional Conduct, held the violation was sufficient grounds for a mistrial, and dismissed the case with prejudice. The district court entered an order to that effect on March 11, 2003.

[¶ 6] On March 25, 2003, the district attorney filed a petition for writ of review in this Court, seeking reversal of the district court's order dismissing the charges with prejudice. We issued an order to show cause why the writ should not be dismissed, questioning whether under Wyo. Stat. Ann. § 9-1-804 (LexisNexis 2003) the district attorney, as opposed to the attorney general, had the authority to pursue a criminal case in this Court. We gave the district attorney fifteen days to respond and served a copy of the show cause order on the attorney general's office. Within that time frame, the attorney general filed an entry of appearance and response to the order. The district attorney also filed a timely response to the order to show cause. After reviewing the responses, we issued an order allowing the case to proceed.[2] In addition to the issues raised in the petition, we asked the parties to brief the question of whether a petition for writ of review is available to the State as a means to obtain review of the district court's order in this case.

## STANDARD OF REVIEW

[¶ 7] The question of whether the State is permitted to challenge the district courts order of dismissal with prejudice by way of a petition for writ of review is purely one of law, which we consider *de novo*. *Innis v. State*, 2003 WY 66, ¶ 8, 69 P.3d 413, ¶ 8 (Wyo.2003). The question of whether to grant a writ of review is committed to the sound discretion of this Court, the exercise of which is limited to rare and unusual cases. *Wright v. State*, 707 P.2d 153, 156 (Wyo. 1985). Speedy trial issues are reviewed *de novo* by this Court. *Dean v. State*, 2003 WY 128, ¶ 50, 77 P.3d 692, ¶ 50 (Wyo.2003).

## DISCUSSION

### Availability of petition for writ of review

[¶ 8] The State contends the petition for writ of review was a proper way to seek

---

2. Mr. Newman contends the petition should be dismissed because the district attorney, rather than the attorney general, requested the writ without authority to do so. He cites Wyo. Stat. Ann. § 9-1-603 (LexisNexis 2003), which requires the attorney general to "represent the state in criminal cases in the supreme court." As noted, in this case the district attorney filed the petition and the attorney general's office entered an appearance only after being served with notice of the petition by this Court. Mr. New-man asserts the attorney general's late entry of appearance was insufficient to bring the petition into compliance with the statute. We previously considered this issue in connection with the order to show cause. Implicit in our order allowing the petition to go forward was our conclusion that the attorney general's prompt entry of appearance upon receipt of the order to show cause brought the petition into compliance with the statute.

review of the district court's ruling. The State argues writs of certiorari are a creation of the common law, which this Court is empowered to issue in its discretion by art. 5, § 3 of the Wyoming Constitution. The State contends a petition for writ is appropriate here because a bill of exceptions would have no affect on the district court's ruling in Mr. Newman's case, but would instead apply only to future cases. Mr. Newman contends the law in this state has long been that a bill of exceptions provides the exclusive avenue for the State to challenge an adverse ruling by a district court in a criminal proceeding. We hold that under the particular facts of this case, a writ of review is appropriate. In reaching that result, however, we emphasize that in all but the most extraordinary circumstances a bill of exceptions provides the exclusive means for the State to challenge adverse rulings made *during the trial* of a criminal case.

[¶ 9] Article 5, § 3 of the Wyoming Constitution provides in relevant part as follows:

§ 3. Supreme court generally; original jurisdiction.

The supreme court shall have original jurisdiction in quo warranto and mandamus as to all state officers, and habeas corpus. The supreme court shall also have power to issue writs of mandamus, review, prohibition, habeas corpus, certiorari, and other writs necessary and proper to the complete exercise of its appellate and revisory jurisdiction.[3]

Wyo. Stat. Ann. § 7–12–102 to 104 (Lexis-Nexis 2003), the statutes governing bills of exception, provide as follows:

§ 7–12–102. Right of district attorney to take exceptions; certification; rules.

The district attorney may take exceptions to any opinion or decision of the court made during the prosecution of a criminal case. Before being filed in the supreme court, the bill of exceptions shall be presented to the trial court which shall certify whether the contents of the bill are correct. If certified, the trial court shall sign the bill containing the exceptions and affix the seal of the court and the bill shall be made part of the record. The bill of exceptions shall be governed by rules as shall be promulgated by the Wyoming supreme court.[4]

§ 7–12–103. Filing of bill by attorney general in supreme court.

Following certification of a bill of exceptions by the trial court as provided by W.S. 7–12–102, the attorney general may apply to the supreme court for permission to file the bill for review and decision upon the points presented. If the supreme court allows the bill to be filed, the judge who presided at the trial in which the bill was taken shall appoint a competent attorney to argue the case against the state and shall fix a reasonable fee for his service to be paid out of the treasury of the county in which the bill was taken.

§ 7–12–104. Decision of supreme court upon bill.

(a) If the bill of exceptions is allowed to be filed, the supreme court shall render a decision on each point presented.

(b) The decision of the supreme court shall determine the law to govern in any similar case which may be pending at the time the decision is rendered, or which may afterwards arise in the state, but shall not reverse nor in any manner affect the judgment of the court in the case in which the bill of exceptions was taken.

[¶ 10] The interpretation of these provisions has been an evolving process in Wyoming jurisprudence, with older cases holding a bill of exceptions was the exclusive means for the State to challenge adverse rulings in criminal

---

3. Wyoming Rule of Appellate Procedure, 13.01 further provides:

(a) All applications to the supreme court for interlocutory or extraordinary relief from orders of the district courts, including such applications as are established by statute . . . may be made as petitions for a writ of review. Granting of a petition is within the discretion of the supreme court.

4. This section is preceded in the statutes by the following provision:

§ 7–12–101. Manner of appeal.

A defendant may appeal his conviction in any criminal case in the manner provided by the Wyoming Rules of Appellate Procedure and the Wyoming Rules of Appellate Procedure for Courts of Limited Jurisdiction.

cases and more recent cases recognizing this Court's discretionary authority in limited circumstances to review State challenges to pre-trial rulings in criminal cases by means of a writ. In *State ex rel. Gibson v. Cornwell*, 14 Wyo. 526, 85 P. 977 (1906), where the State sought both a bill of exceptions and a petition in error, the Court held the petition would not be considered because the Court was without authority to decide questions raised by the State in a criminal case except as provided in the bill of exceptions statutes. The Court said, "[i]t is only upon a compliance with the provisions of the statute in question that this court obtains jurisdiction to review any ruling of the district court adverse to the State in criminal prosecutions." *Id.* at 979. This rule was routinely followed in Wyoming until the 1980s as reflected in *State v. Ginther*, 53 Wyo. 17, 77 P.2d 803, 807 (1938) ("the prosecution in a criminal case in this state is given by statute no method of review of adverse rulings except through the medium indicated in [the bill of exceptions statutes]"); *State v. Benales*, 365 P.2d 811 (Wyo.1961); *State v. Heberling*, 553 P.2d 1043, 1045, fn. 1 (Wyo. 1976); *State v. Selig*, 635 P.2d 786, 788 (Wyo. 1981) ("a bill of exceptions is the exclusive means for the prosecution to seek review of an adverse ruling made during the trial.")

[¶ 11] The first suggestion of change in Wyoming jurisprudence with respect to the rule that a bill of exceptions was the exclusive means available to the State for obtaining review of adverse rulings in criminal cases came in Justice Raper's concurring opinion in *State v. Faltynowicz*, 660 P.2d 368, 372 (Wyo.1983). The case came to the Court on the State's petition for bill of exceptions seeking to challenge the district court's dismissal of a misdemeanor complaint during arraignment on the ground that it did not state the year of the alleged crime. The Court granted the bill of exceptions and held that omitting the date in the complaint was not grounds for dismissing criminal charges absent prejudice to the defendant. Justice Raper agreed with the holding but expressed his view that, so long as jeopardy had not attached, the State was not confined to a bill of exceptions to obtain review of an adverse decision in a criminal case. He said:

I seriously question that the legislature has the authority to restrict our "complete" appellate jurisdiction to hear appeals taken by the State in proper cases if in fact the bill of exceptions procedure does that. There is no constitutional prohibition against the State taking an appeal in a criminal case as long as it is to an issue which would not place the defendant in jeopardy for a second time. Section 11, Art. 1, Wyoming Constitution, supra. When a statute and the constitution collide, the constitution prevails.

We can, and should, avoid the constitutional issue of the legislature's authority to do so if we can reasonably interpret the statute in such a way that it is not viewed as unconstitutional. We can do that here by holding the design of §§ 7–12–102 through 7–12–105 to be applicable only in those cases where the defendant has been placed in jeopardy, and appeals can be taken by the state in all other cases. In other cases the State may appeal within the spirit of § 11, Art. 1, Wyoming Constitution, supra.

*Id.* at 375. Thus, Justice Raper was of the view that the bill of exceptions provided the *exclusive* means for the State to obtain review of adverse rulings *only* where a defendant in a criminal case had been placed in jeopardy.

[¶ 12] That same year, in *Wright v. State*, 670 P.2d 1090, 1099 (Wyo.1983), Justice Thomas, also in a concurring opinion, expressed his support for a rule allowing the Court in exceptional cases to review pursuant to a petition for writ of review sentencing determinations made by trial judges. Citing article 5, § 3 of the Wyoming Constitution, he concluded such discretionary review was constitutionally authorized, warranted if the sentence imposed shocked the conscience of the appellate court, and appropriate where the sentence fell within the statutory parameters leaving the defendant with no valid appeal of the sentence.

[¶ 13] Not long thereafter, in *City of Laramie v. Mengel*, 671 P.2d 340 (Wyo.1983), the Court granted a writ of certiorari after the City, joined by the attorney general, sought

permission to file a bill of exceptions for review of a municipal court ruling that an ordinance and statute allowing the introduction in a criminal trial of evidence of a DUI defendant's refusal to take a blood alcohol chemical test violated the constitutional right against self-incrimination. The Court stated:

> We conclude that in this instance the court appropriately exercised its discretionary authority in issuing the writ of certiorari. The City of Laramie has no appeal from the order of its judges, and it does not have available to it even the review encompassed by the statutes providing for a bill of exceptions. The issue, further is one in which the people of the City of Laramie and the people of the State of Wyoming in other cities where the ruling of the Municipal Judges of the Municipal Court of the city of Laramie might be followed have an interest. The ruling itself is premised upon constitutional grounds and makes the issue one of constitutional magnitude. . . .
>
> The question sought to be reviewed in this case we perceive to be one of great public import and of first impression. We therefore have concluded to exercise our authority to review the issue pursuant to a writ of certiorari in our discretion so that the matter can be conclusively ruled upon.

*Id.* at 345. Thus, in *Mengel*, the rationale for allowing a writ was that no appeal and no bill of exceptions were available to the City and the issue was one of first impression, constitutional magnitude and great public importance.

[¶ 14] Thereafter, the Court expanded *Mengel* by holding in *State v. Heiner*, 683 P.2d 629 (Wyo.1984) that it had the authority pursuant to a writ of certiorari to review a district court's pre-trial ruling suppressing evidence in a criminal case, even though review was available to the State pursuant to a bill of exceptions. In *Heiner*, the State filed its petition for writ of review after the district court entered its order suppressing the evidence and before the jury was impaneled. Thus, jeopardy had not attached. This Court said:

> The threshold question of the authority of this court to review these evidentiary rulings by the trial court pursuant to a writ of certiorari is settled in principle by the decision of this court in [*Mengel*]. . . . We did note in [*Mengel*] that review pursuant to the statutes providing for a bill of exceptions was not available to the city. In that opinion we quoted language from *Call v. Town of Afton*, in which the court observed in substance that the writ of certiorari subserves a good purpose in instances in which an appeal (or a bill of exceptions) is not plain, speedy and adequate. With respect to rulings which suppress important evidence to be offered by the State in a criminal prosecution the inadequacy of the bill of exceptions after an acquittal is patent. . . .
>
> In this case, like [*Mengel*], the rulings of the district court were premised upon constitutional grounds, which results in the presentation to this court of issues of constitutional magnitude. Whether constitutional protections with respect to inculpatory statements of an accused and evidence obtained from the person or property of the accused are to be extended to private individuals is a significant question of first impression in the State of Wyoming. Consequently, we conclude that because of the importance of the evidence suppressed or the use of which is potentially denied to the State of Wyoming; the constitutional magnitude of the issues raised; and the importance of determining the rule with respect to such matters in the State of Wyoming, the court appropriately exercised its discretion in granting the writ of certiorari in this case.

*Heiner*, 683 P.2d at 632 (some citations omitted). Thus, with *Heiner*, the law in Wyoming evolved to allow the State to file a petition for writ of review of *pre-trial* rulings in criminal cases where a bill of exceptions was available but inadequate, and the question for review was one of first impression, constitutional magnitude and great importance.

[¶ 15] Just a month later, the Court held in *State v. Sodergren*, 686 P.2d 521, 528 (Wyo.1984) that it had the authority pursuant to a writ of certiorari to review a district court's dismissal of criminal charges, again concluding that the issue for review involved

a constitutional question of great public import. As in *Heiner*, no jury had been impaneled and, therefore, jeopardy had not attached. It is not entirely clear whether, in granting the writ, the *Sodergren* Court concluded a bill of exceptions was an inadequate remedy, although arguably that can be presumed from the outcome. The State filed both a bill of exceptions and a petition for writ and the Court granted the writ.[5] Having granted the writ, the Court held the vehicular homicide statute unconstitutional, reversed the district court's order dismissing the case for lack of subject matter jurisdiction, and remanded for further proceedings. Addressing the appropriateness of the writ, the Court said:

> The propriety of a writ of certiorari in matters such as this was decided in [*Mengel*].... The issue in this case involves a constitutional question and is of great public import. However, we do serve notice on the bar that we will exercise our discretion to grant certiorari only in unusual circumstances and upon rare occasions.

*Sodergren*, 686 P.2d at 527–28.

[¶ 16] More recently, in *State v. Welch*, 873 P.2d 601 (Wyo.1994) and *State v. Evans*, 944 P.2d 1120, 1124 (Wyo.1997) we followed the lead of *Heiner* and accepted writs to review district court *pre-trial* rulings suppressing evidence. We said in *Evans*:

> In this case, the district court's decision was also premised upon constitutional grounds, presenting this Court with issues of constitutional magnitude; the record indicates that the suppression or use of the evidence is important to the prosecution of this case because of the limited amount of evidence which exists; and whether the district court made a serious error of law concerning the State's burden of proof presents a significant question. Accordingly, we find our review to be appropriate.

*Evans*, 944 P.2d at 1124.

[¶ 17] Just after the *Welch* decision and before *Evans*, we decided *Crozier v. State*, 882 P.2d 1230, 1236 (Wyo.1994) in which we cited the *Cornwell* line of cases for the proposition that a bill of exceptions is the exclusive means for the prosecution to seek review of an adverse ruling in a criminal case. *Crozier* differs from *Heiner*, *Sodergren*, *Welch* and *Evans* in two significant ways. First, in *Crozier*, the State sought review by means of a cross-appeal, not a petition to file a bill of exceptions or writ of review, and so the parties never argued, and this Court did not address, whether a writ was appropriate under *Crozier's* facts. Second, the State sought review of an adverse *post-trial* ruling entered after jeopardy had attached. In light of these differences, we set out the circumstances of *Crozier* in some detail.

[¶ 18] Crozier was originally charged with one count of disposing of stolen property on December 15, 1989. That case was dismissed without prejudice after it was discovered on the first day of trial with the jury seated that the wrong date was charged. The State then re-filed charges, alleging one count of possession of stolen property and one count of disposing of stolen property on November 15, 1989. Crozier moved to dismiss the second count on double jeopardy grounds and the district court reserved ruling on the motion until the evidence was presented. A jury convicted him on both counts. The district court sentenced Crozier on the first count but dismissed the second count. Crozier appealed his conviction on the first count, claiming vindictive prosecution, and the State cross-appealed asserting error in the dismissal of the second count. This Court dismissed the State's cross-appeal, concluding there was no legislative authorization for the State to appeal in a criminal case, and the State's cross-appeal was in effect the same as an appeal. Our decision quoted *State v. Benales*, 365 P.2d 811, 812 (Wyo.1961), for the principle that "a bill of exceptions is the exclusive means for the prosecution to seek review of an adverse

---

5. The majority opinion states the Court denied the petition for bill of exceptions and granted the petition for writ of review. In his dissenting opinion, Justice Rose agrees both were filed but characterizes the situation somewhat differently: "Originally, in the case at bar, the Attorney General petitioned for a bill of exceptions.... Thereafter, and for reasons which remain undisclosed—at least to me—he withdrew the petition and, in its stead, filed a petition for a writ of certiorari." *Sodergren*, 686 P.2d at 531.

ruling made *during the trial."* *Crozier,* 882 P.2d at 1236 (emphasis added).

[¶ 19] *Crozier* raises the question of whether a writ is appropriate in Mr. Newman's case given that the State seeks review of an adverse ruling made *during the trial.* In answering this question, it is significant that in *Crozier* we did not have before us the question of the appropriateness of a bill of exceptions or writ of review. Given this distinction, we are reluctant to extend the *Crozier* holding beyond the circumstances that were before us a cross-appeal by the State from an adverse post-trial ruling in a criminal case. Additionally, *Crozier* cannot be considered in isolation but must be given the weight it is due in light of the other decisions bearing on the question before us. A careful reading of those decisions makes apparent the importance of other factors in determining whether review by means of a writ is appropriate under the circumstances of Mr. Newman's case.

[¶ 20] We have said that the authority to review a trial court determination by way of a writ is available if no other plain, speedy and adequate remedy exists for the party seeking review. *Mengel,* 671 P.2d at 344; *In Re General Adjudication of All Rights to Use Water in the Big Horn River System,* 803 P.2d 61, 67 (Wyo.1990). Here, no other adequate remedy exists because a bill of exceptions would have no effect on the rulings made in this case, but would apply only in future cases as provided in § 7–12–104(b). We have also said that the authority to review a trial court determination by way of a writ is available where a question of first impression, constitutional magnitude and great public import is raised. *Mengel,* 671 P.2d at 345 and *Heiner,* 683 P.2d at 632–33. Here the question of whether the district court properly dismissed the charges with prejudice, preventing the State from re-filing them and bringing Mr. Newman to trial, is a question of first impression, constitutional magnitude and great public import involving speedy trial and separation of powers issues. Art. 1, § 9 of the Wyoming Constitution guarantees the right to a speedy trial in criminal cases. Art. 2, § 1 provides that the powers of government in Wyoming are divid-ed into three departments: legislative, executive and judicial, none of which shall exercise powers belonging to another department. Under the latter provision, we have said:

> "The prosecutive decision traditionally has been exercised by the executive department, and an attempt by the judicial branch of government to exercise that authority by purporting to foreclose the refiling of a criminal charge in the absence of a constitutional or statutory proscription is constitutionally prohibited as a violation of the separation of powers doctrine."

*Hilderbrand v. Padget,* 678 P.2d 870, 872 (Wyo.1984) (citations omitted). *See also* Justice Thomas' concurring opinion in *Faltynowicz,* 660 P.2d at 377, in which he concluded a trial court cannot inhibit the re-filing of a criminal charge without contravening the separation of powers provision. Looking at these two factors, i.e., the inadequacy of a bill of exceptions and the constitutional magnitude of the question—the State's petition for writ of review would seem to be appropriate. However, as demonstrated by the above discussion of Wyoming jurisprudence, never before has this Court granted a petition for a writ of review filed by the State seeking review of an adverse *trial* ruling in a criminal case. This is so because once a jury is impaneled and a trial has commenced, jeopardy ordinarily attaches and any holding by this Court would not affect the particular case under review (i.e. jeopardy having attached, the State could not re-file the charges) but would affect instead only future cases in which the same issue arose. Under the particular facts of Mr. Newman's case, however, where the State sought review of the district court's order dismissing the case with prejudice *after granting a defense motion for a mistrial based upon prosecutorial misconduct,* different principles apply and the question of whether re-filing the charges would place Mr. Newman in jeopardy for a second time remains to be decided. Under these unusual and extraordinary circumstances, we find the writ to be appropriate.

[¶ 21] For double jeopardy to bar re-trial in a case where the district court grants a defense motion for a mistrial based upon prosecutorial misconduct, the defense

must show prosecutorial intent to goad the defense into moving for a mistrial. *Oregon v. Kennedy,* 456 U.S. 667, 676, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). In *Kennedy,* the Court stated:

> Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion ... does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause. A defendant's motion for a mistrial constitutes "a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact." Where prosecutorial error even of a degree sufficient to warrant a mistrial has occurred, "the important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of such error." Only where the governmental conduct in question is intended to "goad" the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion.

*Id.* at 675–76, 102 S.Ct. 2083 (citations omitted).

[¶ 22] In Mr. Newman's case, the question of whether the prosecution intended to goad the defense into moving for a mistrial has not been decided. Mr. Newman moved for a mistrial based upon the prosecution's alleged violation of the ethical rules and his constitutional right to counsel. The district court concluded the prosecution's conduct provided grounds for a mistrial, granted the defense motion and dismissed the case with prejudice on the basis of speedy trial concerns. The question of whether the prosecution had the intent to goad the defense into moving for a mistrial was not at issue below. The parties raised the issue in their briefs to this Court because it is relevant to the issue of double jeopardy, which in turn is directly relevant to the question of whether a writ of review or a bill of exceptions provides the avenue for the State to obtain review of an adverse ruling in a criminal case. The distinctive feature of this case is that the double jeopardy issue was not decided by the district court and, given the procedural posture of the case, cannot be decided unless and until the State re-files the charges against Mr. Newman. At that point, Mr. Newman is entitled to raise the bar of double jeopardy by presenting evidence that the prosecution intended to goad him into moving for a mistrial the first time around. Until evidence and argument is presented on the issue and the district court makes a determination based upon hearing and weighing the testimony presented, this Court has no basis upon which to review the issue. While evidence exists in the record from which it can be argued that was the prosecution's intent, the issue is not properly before us.

[¶ 23] We hold that the writ of review is appropriate in this case. The State has no other adequate remedy, the issues presented are of constitutional magnitude and public importance and, under the particular circumstances of this case, it is not established that allowing the writ will place Mr. Newman in jeopardy for a second time. In reaching this result, however, we emphasize that this case presents rare and unusual circumstances. In the vast majority of cases, a bill of exceptions provides the exclusive avenue for the State to obtain review in a criminal case from an adverse ruling made after trial has commenced. We turn to the question of whether the district court erred in dismissing the case with prejudice.

### Dismissal with prejudice

[¶ 24] In its order, the district court stated: "The trial of this case was commenced beyond the 6 month speedy trial deadline. A further delay caused by the conduct of the prosecutor would place the trial further beyond that deadline. For that reason the case should be dismissed with prejudice." The State argues the district court erred in dismissing the case with prejudice. The State's argument is premised in large part upon the underlying assertion that the district court abused its discretion in granting a mistrial. Mr. Newman's argument that the district court did not err in dismissing the charges with prejudice is likewise piggybacked upon

the argument that the district court did not abuse its discretion in granting the mistrial. We hold the district court erred in dismissing the case with prejudice but do not reach the question of whether it abused its discretion in granting a mistrial because the issue is moot. The district court granted the motion for mistrial, the jury was released and any determination made at this juncture by this Court would have no practical effect on that outcome.[6]

■ [¶ 25] This Court has consistently analyzed speedy trial claims under both W.R.Cr.P. 48 and the constitution. *Newport v. State*, 983 P.2d 1213, 1217 (Wyo.1999). Rule 48(b)(8) of the Wyoming Rules of Criminal Procedure provides:

A dismissal for lack of a speedy trial under this rule shall not bar the state from again prosecuting the defendant for the same offense unless the defendant made a written demand for a speedy trial or can demonstrate prejudice from the delay.

Considering this language, we said in *Newport* that Rule 48(b)

protects a defendant's right to have a speedy original trial; however, it does not address a defendant's right to have a speedy retrial following a mistrial. When the prosecution of a defendant is disrupted by a mistrial, the commencement of the original trial, if it was timely, satisfies the time requirements of W.R.Cr.P. 48(b), and subsequent retrials are excluded from the requirements of the rule.

*Id.* at 1217 (citation omitted). Thus, so long as Mr. Newman's original trial was timely, any subsequent retrial was excluded from the requirements of the rule and the fact that such a retrial under the facts of this case necessarily would have occurred beyond the time for speedy trial was not a basis for dismissing the case with prejudice. The question for our consideration under the Rule 48 analysis, therefore, is whether the original trial commencing on March 3 was timely.

6. Interestingly, had this matter come before the Court on a petition for bill of exceptions, upon

■ [¶ 26] Rule 48(b) of the Wyoming Rules of Criminal Procedure provides in relevant part as follows:

(b) *Speedy trial.*

. . .

(2) A criminal charge shall be brought to trial within 180 days following arraignment unless continued as provided in this rule.

. . .

(4) Continuances exceeding 180 days from the date of arraignment may be granted by the trial court as follows:

. . .

(B) On motion of the attorney for the state or the court if:

(i)The defendant expressly consents;

(ii)The state's evidence is unavailable and the prosecution has exercised due diligence; or

(iii)Required in the due administration of justice and the defendant will not be substantially prejudiced; (C) If a continuance is proposed by the state or the court, the defendant shall be notified. If the defendant objects, the defendant must show in writing how the delay may prejudice the defense.

The district court granted the State's motion to continue the trial past the 180 days because a portion of the State's evidence was unavailable. In making that determination, the trial court concluded after a hearing that the prosecution exercised due diligence. We find nothing in the record warranting a different conclusion and hold the continuance was properly granted. Thus, the district court properly granted the State's motion to continue the trial. Thereafter, when the 180–day period came and went and Mr. Newman filed his motion to dismiss on the basis of a speedy trial violation, he had the burden of showing how the delay prejudiced him. Given that the trial was held within two weeks of the 180–day period, we are unable to find substantial prejudice. We hold that the original trial, which commenced on March 3, was timely and satisfies the time requirements of Rule 48. *Newport*, 983 P.2d

granting the petition we would have been obligated to answer the question.

at 1217. Any subsequent retrial was excluded from the requirements of the rule and under Rule 48 dismissal of the case with prejudice was not appropriate.

[¶ 27] Generally, even when Rule 48 has not been violated, a speedy trial claim is subject to constitutional analysis, meaning the four-part test articulated in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) applies. *Rodiack v. State*, 2002 WY 137, ¶ 11, 55 P.3d 1, ¶ 11 (Wyo.2002). This test requires us to balance 1) the length of delay; 2) the reason for delay; 3) the defendant's assertion of his right; and 4) the prejudice to the defendant. *Id.* The ultimate question is whether the delay in bringing the accused to trial was unreasonable, that is, whether it substantially impaired the right of the accused to a fair trial. *Id.* From the record before us, we hold dismissal with prejudice after the mistrial, on the basis of speedy trial concerns, was not warranted under the constitutional analysis. One hundred and ninety-nine days passed between Mr. Newman's arraignment and the date the district court granted the mistrial; most of that time was attributable to the court's crowded docket and the parties' efforts to reach a plea agreement; and no evidence was presented that delaying the trial to March 3 impaired Mr. Newman's right to a fair trial.

[¶ 28] Given that the district court dismissed the case with prejudice and no new trial date was set, the issue of whether Mr. Newman's speedy trial rights would be violated by the delay between the order of dismissal and any second trial is not before us. In the event the State re-files charges against Mr. Newman upon issuance of the mandate from this Court following this appeal, the speedy trial issue could arise again. For purposes of resolving the issues raised on appeal, we hold only that no speedy trial violation had occurred up to the point when the district court granted the mistrial and dismissed the case with prejudice. The district court's conclusion that any second trial would necessarily violate Mr. Newman's right to speedy trial was premature.